IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LAURA SEIDL, derivatively on behalf of the Nominal defendant with respect to its series mutual fund, the American Century Ultra Fund, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10-4152-CV-W-GAF |
| AMERICAN CENTURY COMPANIES, INC., AMERICAN CENTURY INVESTMENT MANAGEMENT, INC., JAMES E. STOWERS, JR., JAMES E. STOWERS, III, JONATHAN S. THOMAS, THOMAS A. BROWN, ANDREA C. HALL, DONALD H. PRATT, GALE E. SAYERS, M. JEANNINE STRANDJORD, TIMOTHY S.WEBSTER, WILLIAM M. LYONS, MARK MALLON, WADE SLOME, BRUCE WIMBERLY, JERRY SULLIVAN and BILL MONROE, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| AMERICAN CENTURY MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY ULTRA FUND, | ) ) ) ) | |
| Nominal Defendant. | ) | |

**SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED VERIFIED DERIVATIVE COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

STATEMENT OF FACTS ............................................................................................................3

      I.       The Fund's Purchases And Sales Of PartyGaming Stock .......................................3

      II.      The Second Circuit Litigation...................................................................................3

      III.     Plaintiff's Demand On The ACMF Board Of Directors And Formation Of The Special Litigation Committee .................................................................................4

      IV.     The Special Litigation Committee's Investigation, Findings, And Recommendations..................................................................................................5

      V.      Plaintiff's First Amended Complaint......................................................................6

ARGUMENT..................................................................................................................................7

      I.       Legal Standard .........................................................................................................7

            A.      Motion to Dismiss Pursuant to Rule 12(b)(6)..............................................7

            B.      Business Judgment Rule ...............................................................................7

      II.      The First Amended Complaint Should Be Dismissed Because Plaintiff Has Failed To Allege Facts Establishing Wrongful Refusal Of Demand.................................9

            A.      Plaintiff Has Failed To Allege Facts Showing That The Special Litigation Committee And ACMF's Board Failed To Act Independently And In Good Faith ...................................................................................................9

            B.      Plaintiff Has Failed to Allege Facts Rebutting the Presumption That The Special Litigation Committee Conducted A Reasonable Investigation That Reached Reasonable Conclusions...............................................................11

            C.      Plaintiff's Claims For Relief Against Monroe And The Fourth Claim For Relief Should Also Be Dismissed..............................................................14

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**:                                                                                                                      **Page**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................7

*Bender v. Schwartz*, 917 A.2d 142 (Md. Ct. Spec. App. 2007) ........................................8, 9

*Boland v. Boland*, 5 A.3d 106 (Md. Ct. Spec. App. 2010),
    *cert. granted,* 10 A.3d 1180 (Md. 2011)..............................................................8, 11

*In re Bridge Information Sys., Inc.*, 325 B.R. 824 (E.D. Mo. 2005) .................................8

*C. N. v. Willmar Pub. Schools*, 591 F.3d 624 (8th Cir. 2010) .............................................7

*Daley v. Marriott Int'l, Inc.*, 415 F.3d 889 (8th Cir. 2005) ................................................15

*Hartsel v. The Vanguard Group, Inc.*, No. A 5394-VCP, 2011 WL 2421003
    (Del. Ch. June 15, 2011), *notice of appeal filed* (Del. June 17, 2011) ..................12

*Irving v. Dormire*, 586 F.3d 645 (8th Cir. 2009) ............................................................ 9-10

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991).........................................................2

*Levy v. Ohl*, 477 F.3d 988 (8th Cir. 2007) ...........................................................................3

*McBrearty v. Vanguard Group, Inc.*, No. 08 Civ. 7650 (S.D.N.Y.).....................................4

*In re Merrill Lynch & Co., Inc., Securities, Deriv. and ERISA Litig.*,
    773 F. Supp. 2d 330 (S.D.N.Y. 2011).......................................................................14

*Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978 (8th Cir. 2008) ...........................3

*Seidl v. American Century Cos., Inc.*, No. 10-2313-cv, 2011 WL 2417319
    (2d Cir. June 17, 2011), *cert. filed*, No. 11-339..................................................4, 9

*Seidl v. American Century Cos., Inc.*, 713 F. Supp. 2d 249 (S.D.N.Y. 2010),
    *aff'd*, No. 10-2313-cv, 2011 WL 2417319 (2d Cir. June 17, 2011) ..................4, 13

*In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*, 631 F. Supp. 2d 1151
    (D. Minn. 2009) .........................................................................................................8

*Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001) ......................................................... 7-8

**Statutes and Rules**:

18 U.S.C. § 1955 ................................................................................................................1

18 U.S.C. § 1961-1968. ....................................................................................................3

Federal Rule of Civil Procedure 12(b)(6) ......................................................................1, 7

**Miscellaneous:**

James J. Hanks, Maryland Corporation Law (2009 Supp.) .................................................9

Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster (the "Independent Directors") and nominal defendant American Century Mutual Funds, Inc., doing business as American Century Ultra Fund ("the Fund") (collectively, "Defendants"), move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's First Amended Verified Derivative Complaint. For the reasons set forth in the following Suggestions in Support of their Motion to Dismiss, Defendants' Motion to Dismiss should be granted and Plaintiff's First Amended Complaint should be dismissed with prejudice.

## INTRODUCTION

Plaintiff has brought this action against American Century Companies, Inc. ("ACC"), American Century Investment Management, Inc. ("ACIM"), nominal defendant American Century Mutual Funds, Inc. ("ACMF"), current and former directors of ACMF, current and former executives of ACMF and ACC, and employees of ACIM. (First Am. Compl. ¶¶ 28-42.) Plaintiff's claims for relief arise out of the Fund's purchase of shares in PartyGaming Plc, an internet gambling company publicly traded on the London Stock Exchange. Plaintiff alleges that PartyGaming was an illegal gambling business under 18 U.S.C. § 1955, and that the Fund's purchase of PartyGaming shares thus violated Section 1955. Plaintiff alleges that the purchase of shares caused the defendants in this action to violate various common law duties and caused ACIM to breach a contract with ACMF. (First Am. Compl. ¶¶ 147-68.) Plaintiff asserts derivative claims on behalf of ACMF and seeks recovery for injury allegedly caused by the decline in the value of the shares of PartyGaming.

In an action filed in a New York federal district court in 2008, this same plaintiff alleged, among other things, that the purchase of PartyGaming shares caused defendants to violate the

same common law duties alleged here.  Plaintiff did not make a demand on ACMF's board of directors prior to filing that action, but instead alleged that demand would be futile.  The district court disagreed and dismissed Plaintiff's action with prejudice for failure to establish futility of demand.  A few weeks after the dismissal, Plaintiff sent a letter to ACMF's board of directors demanding that it pursue the claims asserted in the complaint that had been dismissed by the district court.

After undertaking a detailed investigation and thorough analysis, a special committee of independent directors recommended to ACMF's board that ACMF not pursue the claims because doing so would not be in the best interests of ACMF and its shareholders – a recommendation accepted by ACMF's board.  Plaintiff's First Amended Complaint alleges that she may assert claims on behalf of ACMF because her demand was wrongfully refused.  However, the First Amended Complaint is fatally flawed because Plaintiff has failed to allege facts sufficient to establish such wrongful refusal.  The purpose of the demand requirement is to afford directors an opportunity to exercise their reasonable business judgment and "waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (citation omitted).  Therefore, under applicable law, the Court should defer to the business judgment of ACMF's board of directors and dismiss Plaintiff's First Amended Complaint with prejudice.

## STATEMENT OF FACTS

### I. The Fund's Purchases And Sales Of PartyGaming Stock

The objective of the Fund is "long-term capital growth." (Special Litigation Committee Report ("SLC Report"), attached hereto as Exhibit A, at 17.[1]) To achieve its objective, the Fund is able to invest in a wide range of securities, including those listed on foreign exchanges. (SLC Report at 17.) The Fund's investment adviser, American Century Investment Management, Inc. ("ACIM"), conducted an analysis of PartyGaming Plc, an internet gambling company listed on the London Stock Exchange, and the Fund made the first of several purchases of PartyGaming shares in July 2005. (First Am. Compl. ¶ 52; SLC Report at 1.) The Fund sold all of its PartyGaming shares in July 2006 at a loss of approximately $16 million. (First Am. Compl. ¶ 88; SLC Report at 1.)

### II. The Second Circuit Litigation[2]

On October 15, 2008, Plaintiff filed a class action and derivative suit in the United States District Court for the Southern District of New York asserting claims derivatively on behalf of ACMF and direct claims on behalf of herself and a putative class of Fund shareholders.[3] Plaintiff alleged that the Fund's purchases of PartyGaming shares resulted in various violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968,

---

[1] The Court also may consider certain documents not attached to the First Amended Complaint because they are "public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (citations omitted). Considering materials outside the four corners of the complaint does not automatically convert a Rule 12(b)(6) motion to one for summary judgment. *See*, *e.g.*, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (finding that district court did not err by considering state court proceedings without converting Rule 12(b)(6) motion to one for summary judgment).

[2] Plaintiff's action filed in the United States District Court for the Southern District of New York, subsequent appeal to the Second Circuit Court of Appeals, and the Petition for Writ of Certiorari to the United States Supreme Court will collectively be referred to as the "Second Circuit litigation."

[3] Plaintiff first filed a complaint in the United States District Court for the Northern District of California, but when the district court *sua sponte* requested briefing regarding venue, Plaintiff voluntarily dismissed the action.

and common law duties.  Plaintiff filed an amended complaint and then a Second Amended Complaint, which asserted derivative, class, and individual claims for violations of RICO and common law duties.  On May 7, 2010, Judge Cote dismissed Plaintiff's RICO claims pursuant to her decision in *McBrearty v. Vanguard Group, Inc.*, No. 08 Civ. 7650 (S.D.N.Y.).  Judge Cote also determined that Plaintiff's direct claims could only be brought derivatively and thus dismissed the Second Amended Complaint with prejudice for failure to adequately plead demand futility (as Plaintiff acknowledged that she had not made a demand).  *See Seidl v. American Century Cos., Inc.* 713 F. Supp. 2d 249, 255 (S.D.N.Y. 2010).  Plaintiff appealed the decision to the Second Circuit Court of Appeals, which affirmed Judge Cote's decision by summary order on June 17, 2011.  *See Seidl v. American Century Cos., Inc.*, No. 10–2313–cv, 2011 WL 2417319 (2d Cir. June 17, 2011), *cert. filed*, No. 11-339.

### III. Plaintiff's Demand On The ACMF Board Of Directors And Formation Of The Special Litigation Committee

On June 28, 2010, Plaintiff sent a letter to AMCF's board of directors (the "Demand Letter") enclosing a copy of her Second Amended Complaint and demanding that ACMF pursue the claims asserted therein.  (Demand Letter, attached hereto as Exhibit B, at 1.)  Less than three weeks later, Plaintiff filed her initial complaint in this Court asserting only common law claims on behalf of ACMF.  Notably, this initial complaint did not include a claim for breach of contract.  In response to the Demand Letter, ACMF's board of directors appointed a Special Litigation Committee ("SLC") to consider Plaintiff's claims.  The SLC was comprised of two independent directors of ACMF, James A. Olson and John R. Whitten, who were not directors at the time of the Fund's purchases and sales of PartyGaming shares.  The SLC retained the firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn") to assist in its investigation.

4

**IV.     The Special Litigation Committee's Investigation, Findings, And Recommendations**

Pursuant to Plaintiff's Demand Letter, the SLC focused on examining the claims asserted in the Second Amended Complaint filed in the Second Circuit litigation. Accordingly, the SLC evaluated whether ACMF should assert claims based on RICO, for breach of fiduciary duty, for negligence, and for waste. In evaluating Plaintiff's claims, the SLC and its independent counsel reviewed over 4,000 documents. (SLC Report at 16.) The documents reviewed included, among other things, "minutes and meeting materials for meetings of the Board, the Fund Performance Review Committee, and the Compliance and Shareholder Communications Committee; … presentations and reports prepared by the investment adviser; investment policy statements; … internal and third-party stock analysis; and contemporaneous correspondence." (SLC Report at 16.) The SLC and its independent counsel also conducted interviews of nearly 30 individuals, including "twenty-two extensive fact interviews with twenty-one individuals, some by phone and many in person." (SLC Report at 16.) The SLC's independent counsel also held a comprehensive telephone conference with Plaintiff's counsel, during which Plaintiff's counsel "explained his client's claims and advanced a number of legal theories [he] believed would support those claims." (SLC Report at 15.)

On January 25, 2011, the SLC issued a report of its findings and recommendations. The SLC Report included, among others, the following findings:

- Third-party analysts had differing opinions regarding investments in PartyGaming, though "[m]ost sell-side analysts favored investments in PartyGaming, [with] some even noting that the 'legal issues [are] over-exaggerated by the market' and that 'the [U.S.] government may not be able to clamp down on the industry in the unlikely event of it moving to a more prohibitionist stance.'" (SLC Report at 35.)

- The SLC was not "aware of any case in which law enforcement officials prosecuted owners of shares of publicly traded online gambling companies for violations of Section 1955 in relation to internet gambling." (SLC Report at 37.)

5

- The likelihood of success on Plaintiff's RICO claims was "very unlikely" because they were "of doubtful legal merit. . . ."  (SLC Report at 58.)

- "There is no evidence that the directors made decisions that were careless, disloyal, or in bad faith. Consequently, [Plaintiff's breach of fiduciary duty and negligence] claims against the directors are likely to fail."  (SLC Report at 66.)

- "[T]here is no factual basis for finding ACIM's senior executives or portfolio managers liable for breach of fiduciary duty, negligence, or breach of contract with respect to the Ultra Fund's investment in PartyGaming.  Consequently, there is no basis of liability for ACIM."  (SLC Report at 76.)

- "[T]here is no basis for a breach of contract claim. Although the investment management agreement requires ACIM to comply with all applicable laws, the contract's standard of care eliminates liability if ACIM negligently meets that obligation. The investigation revealed no negligence, much less gross negligence as would be required to establish liability for a breach of contract."  (SLC Report at 78.)

- "It is unlikely the ACMF could prevail in asserting a waste claim against any of the defendants."  (SLC Report at 80.)

- "[T]he costs that would be incurred to pursue these claims on behalf of ACMF could offset or eclipse any recovery that ACMF might obtain.  ACMF would have to hire outside legal counsel to pursue the claims."  (SLC Report at 80.)

The SLC thus concluded that it would not be in the best interests of ACMF and its shareholders to pursue the claims referenced in Plaintiff's Demand Letter.  On January 31, 2011, ACMF's current independent directors adopted a resolution accepting the SLC Report and the recommendations therein.  Plaintiff received copies of the SLC Report and board resolution.

## V.     Plaintiff's First Amended Complaint

Pursuant to joint requests of the Parties, this Court stayed these proceedings pending the resolutions of the SLC's investigation and of Plaintiff's appeal to the Second Circuit.  On August 15, 2011, Plaintiff filed her First Amended Complaint in this Court.  Plaintiff asserts derivative claims on behalf of ACMF for breach of fiduciary duty, negligence, waste, and breach of contract.  Plaintiff's First Amended Complaint differs from the initial complaint filed in this Court and from the Second Amended Complaint referenced in her Demand Letter in the

following ways: (1) Plaintiff asserts claims for relief against an additional defendant, Mr. Monroe, and (2) Plaintiff alleges that ACIM breached its contract with ACMF, and that all defendants "knowingly participated in or induced ACIM's breach . . . ." (First Am. Compl. ¶¶ 147-68.) Plaintiff alleges that she may assert derivatively the claims made in her initial complaint because her demand was wrongfully refused by ACMF's board of directors. Plaintiff also alleges that she may assert derivatively the claims not made in her initial complaint or referenced in the Demand Letter (the claims against Mr. Monroe and for breach of contract) because making a demand on ACMF's board of directors would be futile.

## ARGUMENT

I. **Legal Standard**

    A. <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

Plaintiff's causes of action can survive a Rule 12(b)(6) motion to dismiss only if they "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court must consider all facts alleged in the complaint as true when considering a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *C. N. v. Willmar Pub. Schools*, 591 F.3d 624, 630 (8th Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

    B. <u>Business Judgment Rule</u>

Plaintiff principally alleges that she is entitled to assert claims on behalf of ACMF because her demand was wrongfully refused. Under Maryland law, "[i]f a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business

7

judgment rule standard."[4] *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001). Recent Maryland appellate decisions have explained that, in this context, "the business judgment rule serves as one of abstention, by which the courts will defer to the decision of a special litigation committee on whether to pursue the claims at issue, so long as the committee acted independently and in good faith, conducted a reasonable investigation, and reached reasonable conclusions." *Boland v. Boland*, 5 A.3d 106, 122 (Md. Ct. Spec. App. 2010), *cert. granted*, 10 A.3d 1180 (Md. 2011). "Under the business judgment rule, in assessing the reasonableness of a litigation committee's investigation and conclusions, *the focus must be on the fact gathering methodology employed by the committee as opposed to its substantive decisions*." *Id.* at 130 (emphasis added) (citations omitted).

Because the business judgment rule requires a court to give deference to the decision of ACMF's board, a shareholder "challenging the [board]'s decision not to pursue the derivative claims bears the burden to establish facts rebutting the presumption that the directors acted reasonably and in the best interests of the corporation." *Id.* at 119 (internal quotation marks and citations omitted). In order to rebut the presumption, the shareholder "must show more than mere suspicions and must state a claim in particular, rather than conclusory terms." *Bender v. Schwartz*, 917 A.2d 142, 152 (Md. Ct. Spec. App. 2007) (citation omitted). If the shareholder "fail[s] to rebut the presumption of reasonableness of [the special litigation committee]'s investigation… under the business judgment rule, [the court] must defer to the [special litigation

---

[4] The basis for the decision to refuse Plaintiff's demand was the SLC's Report. Maryland law applies to the determination of whether demand was wrongfully refused because "[s]tate law governs an SLC's power to terminate a derivative action." *In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*, 631 F. Supp. 2d 1151, 1156 (D. Minn. 2009) (citing *Burks v. Lasker*, 441 U.S. 471, 486 (1979)). Under Missouri law, a court determining questions of corporate governance must apply the law of the state of incorporation. *See*, *e.g.*, *In re Bridge Information Sys., Inc.*, 325 B.R. 824, 830-31 (E.D. Mo. 2005) ("Missouri courts generally apply the internal affairs doctrine with respect to disputes involving the administration or governance of a corporation. … Accordingly, under the internal affairs doctrine, the applicable law … is the state law under which the corporation exists.") (citations omitted).

8

committee's] conclusions . . . ." *Id.* at 165. *See also* James J. Hanks, Maryland Corporation Law § 7.21[c], p. 276.20 (2009 Supp.) ("Thus, in applying Maryland law in determining whether to uphold the decision of a board or board committee to terminate a derivative proceeding, a court may not review the merits of the derivative claim unless the presumption of [the business judgment rule] is rebutted."). For the reasons discussed below, Plaintiff has failed to allege facts establishing wrongful refusal of her demand.

## II. The First Amended Complaint Should Be Dismissed Because Plaintiff Has Failed To Allege Facts Establishing Wrongful Refusal Of Demand

### A. Plaintiff Has Failed To Allege Facts Showing That The Special Litigation Committee And ACMF's Board Failed To Act Independently And In Good Faith

By making a demand, Plaintiff has "waived any claim [she] might otherwise have had that the board *cannot independently act* on the demand." *Bender*, 917 A.2d at 152 (emphasis in original) (internal quotation marks and citation omitted). Therefore, in order to establish that her demand was wrongfully refused and that she may proceed derivatively on behalf of ACMF, Plaintiff must show that the SLC or ACMF's board "*in fact* did not act independently . . . ." *Id.* (emphasis in original). Allegations unrelated to how the SLC or ACMF's board actually investigated and considered the demand therefore are irrelevant to whether the SLC and board acted independently and in good faith. Accordingly, Plaintiff's allegations that ACMF's board failed to take timely action (First Am. Compl. ¶ 117), and that it includes members who are defendants in this action and previously filed pleadings (First Am. Compl. ¶ 118(e)), are of no consequence to determining whether her demand was wrongfully refused.[5]

---

[5] The Second Circuit Court of Appeals affirmed the district court's dismissal with prejudice of Plaintiff's complaint in the Second Circuit litigation. *See Seidl*, 2011 WL 2417319. Although in the context of demand futility and not wrongful refusal of demand, Plaintiff made identical arguments regarding the ability of ACMF's board to consider a demand independently. Therefore, even if the Court were to consider the allegations in Paragraphs 117 and 118(e)

Plaintiff's only allegation describing a failure to act independently and in good faith is the denial of Plaintiff's attorneys' offer to participate in the SLC's investigation and request for documents. (First Am. Compl. ¶ 118(d).) This allegation is insufficient to establish a lack of independence and good faith. First, it is simply illogical to conclude that an SLC fails to act independently and in good faith if it rejects a request to participate in the investigation made by attorneys *for one of the parties to the litigation*. Indeed, no Maryland court has found that independence and good faith require the SLC to permit the shareholder's counsel to participate and to exclude the defendants' counsel. Second, Plaintiff's request for documents was essentially an effort to engage in discovery prior to any determination that she has alleged sufficient facts in her complaint to permit this case to go forward. In any event, Plaintiff's suggestion that she was improperly denied access to SLC materials rings hollow in light of her own allegation that the SLC Report "confirmed and verified all facts necessary for Plaintiff to prevail on all of her claims on behalf of ACMF, including damages . . . ." (First Am. Compl. ¶ 118(a).) Plaintiff thus appears to have received all necessary information for her complaint, which does not indicate a lack of independence or bad faith.

Indeed, ACMF's board demonstrated its good faith and interest in an independent consideration of the claims referenced in Plaintiff's Demand Letter by appointing an independent SLC to investigate Plaintiff's claims. The SLC in turn retained independent counsel to assist in

---

as relevant to determining whether the Fund's board could act independently, Plaintiff's arguments are barred pursuant to the doctrine of collateral estoppel. Collateral estoppel is appropriate when:

> (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action.

*Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (citations omitted). The issue is identical (whether the complaint's allegations establish lack of independence); the action was dismissed with prejudice; the parties are identical; and Plaintiff was given a full and fair opportunity to be heard.

10

its investigation. Neither the SLC's nor its independent counsel's compensation was conditioned on reaching any particular conclusion. (SLC Report at 13.)

> B. <u>Plaintiff Has Failed to Allege Facts Rebutting the Presumption That The Special Litigation Committee Conducted A Reasonable Investigation That Reached Reasonable Conclusions</u>

As a Maryland appellate court recently explained, "[u]nder the business judgment rule, in assessing the reasonableness of a litigation committee's investigation and conclusions, the focus must be on the fact gathering methodology employed by the committee as opposed to its substantive decisions." *Boland*, 5 A.3d at 130. The court set forth the following non-exclusive list of factors considered by courts when determining whether an investigation was reasonable:

> (i) whether the committee engaged independent counsel to assist in the investigation; (ii) whether the committee produced a report, its length, and whether it documented the committee's procedures, reasoning, and conclusions; (iii) whether the committee properly identified the claims at issue; (iv) whether the committee reviewed the testimony of or interviewed directors, officers, and employees; (v) whether the committee (or counsel hired to assist it) reviewed documents regarding the questionable transaction; and (vi) the number of times the committee met.

*Id.* (citations omitted). The investigation is presumed under the business judgment rule to be reasonable and in good faith, and it is Plaintiff's burden to allege facts rebutting the presumption.

The First Amended Complaint fails to allege any facts to rebut the presumption of reasonableness, and instead makes a number of attacks on the SLC's investigation and conclusions exemplifying the "formulaic recitation of the elements of a cause of action" and "conclusory terms" held to be inadequate by the U.S. Supreme Court and the Maryland Court of Appeals. For example, Plaintiff first attacks the SLC's investigation simply by citing to a conclusion and stating, without any explanation, that that the conclusion was "not a proper exercise of business judgment." (First Am. Compl. ¶ 118(b).) Plaintiff similarly alleges that "[n]one of the reasons included in the [SLC Report] for refusing the [demand] are legitimate

11

reasons for refusing to vindicate the rights of the investors in the Fund,"[6] but does not explain why any of the SLC's reasons are not legitimate. (First Am. Compl. ¶ 118(f).) If an SLC concludes that the likelihood of success on the merits is remote and that the costs of litigation would outweigh any benefit, it is difficult to envision more appropriate reasons for recommending that litigation not be pursued.

Plaintiff further attacks the SLC's investigation by alleging that the SLC "mistakenly dismissed Plaintiff's claim that Defendants violated RICO . . . ." (First Am. Compl. ¶ 118(c).) This allegation is a red herring because Plaintiff does not allege any RICO claims in the First Amended Complaint. The crux of Plaintiff's claims is that the investments in PartyGaming were illegal because they violated Section 1955, and that by making these "illegal" investments the defendants breached their fiduciary duties. The SLC made the following observation with respect to Section 1955:

> No court has ever imposed Section 1955 liability on a passive investor. The vast majority of Section 1955 cases involve parties active in the gambling enterprise. In fact, the SLC found no cases in which the government charged a passive investor in a gambling business with violating Section 1955, even though many financial institutions openly invested in gambling companies that were later prosecuted for violating gambling laws.[7]

(SLC Report at 74.) The SLC thus conducted a reasonable analysis of the central theory underlying each of Plaintiff's claims for relief.

---

[6] Plaintiff no longer asserts class claims on behalf of other investors, and only asserts claims on behalf of ACMF.

[7] In examining whether a potential risk of liability excused demand under Delaware law in another case brought by Plaintiff's counsel, the Delaware Chancery Court recently stated: "Plaintiffs' arguments essentially hinge on whether purchasing or owning the Challenged Securities is a crime under § 1955. Having carefully considered the allegations in the Complaint and the submissions and arguments of the parties, I am not convinced that this conduct is criminal." *Hartsel v. The Vanguard Group, Inc.*, No. A 5394-VCP, 2011 WL 2421003, at *25 (Del. Ch. June 15, 2011), *notice of appeal filed* (Del. June 17, 2011).

Plaintiff also alleges that the SLC failed to "analyze[] the interests of the Fund itself as opposed to the interests of the Nominal Defendant of which the Fund is just a small part." (First Am. Compl. ¶118(f).) This allegation similarly is an attempt by Plaintiff to muddle the issues. As alleged by Plaintiff, "ACMF is a 'series' mutual fund [with] two or more portfolios of securities, each offering a separate series or class of stock to investors." (First Am. Compl. ¶ 25.) The Ultra Fund is one of multiple portfolios of securities. However, there is no indication that the SLC considered the interests of any other portfolio fund besides the Ultra Fund. Indeed, by examining whether ACMF should pursue Plaintiff's claims, the SLC effectively (and properly) considered the interests of the Fund and its shareholders because "any recovery in a derivative suit would go to the shareholders of the Ultra Fund, not to the shareholders of ACMF's other funds." *Seidl*, 713 F. Supp. 2d at 257, n.9.

Indeed, the SLC Report on which the First Amended Complaint relies shows that the SLC's investigation was reasonable based on the *Boland* factors quoted above. The SLC engaged Gibson Dunn as independent counsel to assist in its investigation. Neither the attorneys leading independent counsel's efforts nor the firm itself had ever represented ACMF, ACC, ACIM, or any individual defendant. (SLC Report at 13-14.) The SLC prepared an 81-page report which documented in detail the investigation, an analysis of Plaintiff's claims, and its conclusions. The SLC properly identified the claims at issue. In fact, the SLC even considered a breach of contract claim not made in either the Second Amended Complaint in the Second Circuit litigation or the initial complaint filed in this court, but which Plaintiff asserts for the first time in the First Amended Complaint. (SLC Report at 78.) Both members of the SLC participated in each of the approximately 30 interviews conducted during the course of the investigation. (SLC Report at 16.) The SLC and its counsel reviewed over 4,000 documents.

(SLC Report at 16.) Finally, the SLC met on an approximately weekly basis during its four-month long investigation. (SLC Report at 16.)

        C.      <u>Plaintiff's Claims For Relief Against Monroe And The Fourth Claim For Relief Should Also Be Dismissed</u>

Plaintiff's Demand Letter referred ACMF's board to the Second Amended Complaint filed in the Second Circuit litigation. That complaint did not name Monroe as a defendant or include a breach of contract claim. With respect to the claims not asserted in the Second Circuit litigation, Plaintiff alleges that "any demand on the board of ACMF to pursue this litigation is excused as futile." (First Am. Compl. ¶ 119.) Plaintiff's demand excused claims should be dismissed for several reasons.

First, courts have rejected the use of amendments to derivative complaints as a means of re-litigating whether demand is excused. As one district court stated,

> [C]ourts have held that "[p]ermitting a stockholder to demand action involving only one theory or remedy and to argue later that demand is excused as to other legal theories or remedies arising out of the same set of circumstances as set forth in the demand letter would create an undue risk of harassment."

*In re Merrill Lynch & Co., Inc., Securities, Deriv. and ERISA Litig.*, 773 F. Supp. 2d 330, 350 (S.D.N.Y. 2011) (citation omitted).

Second, the SLC actually considered Monroe's conduct as well as whether to bring a breach of contract claim. The ACMF board's decision not to pursue any claims against ACIM or the Fund's portfolio managers should apply with equal force to Monroe. In considering whether to assert such claims, the SLC specifically considered Monroe's conduct and involvement in the purchases of PartyGaming shares in concluding that no action should be brought against ACIM because "[t]he Ultra Fund team conducted a reasonable analysis before investing in PartyGaming." (SLC Report at 72.) In addition, the SLC considered a breach of contract theory

14

and concluded that "there is no basis for a breach of contract claim." (SLC Report at 78.) Plaintiff's premise, that the conduct of Monroe and a breach of contract claim were not investigated and thus not subject to the board's decision to reject Plaintiff's demand, is factually inaccurate.

Finally, even if Plaintiff's demand-excused claims against Monroe and for breach of contract were not subsumed in the SLC's investigation and report, Plaintiff is precluded from relitigating the issue of demand futility in this case either under the doctrine of collateral estoppel (because her demand futility assertion, based on the same alleged facts, was rejected in the Second Circuit Litigation[8]) or under the doctrine of res judicata (because, even if the futility issue is somehow deemed to be a different issue in the context of the Monroe and contract claims, she could have asserted such claims in the Second Circuit Litigation[9]). Therefore, Plaintiff's additional claims should also be dismissed because the question of whether she has standing to bring a derivative claim on the basis of demand futility has already been decided.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's First Amended Verified Derivative Complaint and dismiss Plaintiff's First Amended Verified Derivative Complaint with prejudice.

---

[8] *See* Note 5 *supra* regarding the standard for collateral estoppel.

[9] "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties … based on the same cause of action." *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 895-96 (8th Cir. 2005) (citations omitted). Res judicata can apply even where identical causes of action are not asserted because "whether a second lawsuit is precluded turns on whether its claims arise out of the same nucleus of operative facts as the prior claim." *Id.*, 896 (internal quotation marks and citations omitted). As the Eighth Circuit has held, "in the final analysis the test would seem to be whether the wrong for which redress is sought is the same in both actions." *Id.* (internal quotation marks and citations omitted).

Dated: September 30, 2011

Respectfully submitted,

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP

By: /s/ Kurt D. Williams

Kurt D. Williams MO Bar # 36957
Nick J. Kurt MO Bar # 52216
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: 816-627-0215
Facsimile: 816-561-1888
Email: kwilliams@berkowitzoliver.com

And

Steuart H. Thomsen (*pro hac vice*)
SUTHERLAND ASBILL &
BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202-383-0166
Facsimile: 202-637-3593
Email: steuart.thomsen@sutherland.com

Attorneys for Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, Timothy S. Webster, and Nominal Defendant American Century Mutual Funds, Inc., doing business as American Century Ultra Fund